Good morning. Good morning, Judge Callahan. Almost good afternoon, but good morning. Counsel. Thank you, Your Honor. Good morning. May it please the Court, Counsel. My name is Gregory Fisher. I represent C. W. and her mother, K. S., and they're trial attorneys. This is a fees appeal on an IDEA case. The district judge concluded that the underlying claims were frivolous and filed for an improper purpose. In our opinion, that's not correct. Claims were never frivolous. They certainly were not filed for an improper purpose. Mother wanted a second opinion, is what this case is about. Why did she want a second opinion? There was an assessment meeting in September of 2010, and during the assessment opinion, everybody agreed that the child here, C. W., needed to be assessed for potential occupational therapy. And the mother was delighted with that. She was desperate. She thought that that would help her daughter. An assessment thereafter was conducted. It's in the record. The Court has seen it. And it was a decent assessment. No argument there. The mother believes, and I think this is in the record as well. Didn't she say it was stupid? The assessment report, yes. And I think, is that a productive comment?       They do. They do. They do. They do. They do. They do. They do. They do. They do. They do. They do. They do.     They do. They do. They do. Yes, they do. Why did the mother get frustrated here? You see some glimmer of this in the record, of course, because the consultant, the mother has lived with her daughter at that time for 11 years and had communicated to the consultant all of the deficits that she saw and had tried to explain why she thought occupational therapy would help her daughter. The consultant, and I'm not pointing a finger at the consultant. I think she did a good job. She did everything that she could do. But the consultant said, well, that's not what I had seen. I'll be happy to look at it again. And the mother believed, and I think rightfully so, that at least her opinions were being somewhat not credited, perhaps. Then there is a report at the end of the assessment period. And that's the January 5th report. And the mother is going into this process, Judge Callahan, with the belief that we're going to be looking at occupational therapy. When she looks at the report, the mother believed, and her trial counsel believed, that the report really did not meaningfully address any real form of occupational therapy. Well, I don't think this is where we get in the problems in terms of that. One of the amicus briefs, and I don't know whether you're arguing this, when you argue against fees to the school district because they might discourage parents and attorneys from asserting valid IDA claims, which obviously it's an interactive process. You know, we want full engagement of the parents and all of that. But if Congress specifically provided for the possibility of attorney's fees in Section 1415, hasn't Congress decided that attorney's fees should be granted in some cases? Yes. Okay. In some cases. Not this case. Okay. Well, and so that's – but some of the amicus briefs – it's sort of the amicus area it's more focusing on, well, we don't ever want to chill rights. Well, of course we don't want to. But it seems that Congress has gone – recognizes that also we don't want school districts to have to defend against frivolous lawsuits and expend a limited amount of money to people that very much need this. And that – and I'm sure to the extent that you are familiar with the IDEA, it's not – it's not all that you can be. You know, it's not – that's not what unfortunately – which, I mean, that would be great all that you can be. It's – they're entitled to FAPE, right? And that doesn't mean – so there's always – there's going to be some discussion about that. And probably if the funds were unlimited, you could always do better. But we have to look at it from the standpoint of FAPE. And so when you get there, the mother – my understanding is when she didn't agree with that report, which was perfectly okay, she wanted another evaluation done. Which, at the expense of the school district, right? And they have to – my understanding is from the record that – and the due process hearing, if that's the case, they have to look at everything's done because it – they would be paying for it at the expense of the school district. And that's part of the money that they have. And they have to make sure that if they did – if they did everything that they're using that money to have another report just because someone wants it, they're going to deny it. But anyway, that went on. And then at the due process hearing, then there's a challenge, I think, both as to what they're saying, but the OT – what the report says and what the services are. But then there's also the due process challenge as to 41 days, right? And then we get in front of – is it Judge Carter, ultimately? Well, okay. The question that I have at that point is my understanding that three of the claims, I think, it's that the – are based on a letter that was written in response to a letter that your client wrote. Your client, after losing at the school and before the due – said, okay, I want this otherwise I'm going to appeal. And the school district wrote back and said, well, no, we're not going to do that. And you should be advised that we can claim attorney's fees too, right? And that letter is the basis of a 1983, a 504, and – An ADA claim. ADA. Yes. And – I'm sorry, Judge – Is that the whole basis of those claims, the letter? Yes, that's correct. And so I'm trying to sort of – But I guess why can't the school district say what their position is without – it's a 1983, a 504, and an ADA claim. So on the merits, I think ultimately those claims, the way they were resolved, answers your question, if I understand it. Two of those claims, of course, were dismissed by stipulation. The third claim, the 504 claim, Judge Carter looked at it very carefully and he concluded, you know what, this is a plausible claim, but for the fact that you had an attorney sort of acting as a filter to prevent this claim from having a coercive or an intimidating effect. And for that reason and for that reason only, we're going to go ahead and dismiss it. With leave to amend, right? With leave to amend, yes, that's correct. Again, the leave to amend, didn't it allege the 504 and the 1983 and the ADA claim again? That's correct, Your Honor. So why doesn't it get frivolous at that point? Well, I have a couple of answers to that. Number one, of course, is that the claims were dismissed by stipulation. And at no time during this process did anybody move for fees under the local rules in the Central District of California. The court, you know, 14 days after a dismissal to move for fees. And nobody asked for fees when the first two claims were dismissed by stipulation. By the way, on the 1983 claim, Judge Carter pointed out that their whole argument was based on an 11th amendment. But I thought they were dismissed with prejudice, the ADA and the 1983 claims. That's correct. Okay, so whether you agree with it or not, but if they're dismissed with prejudice and then you bring them up again on the amendment for the 504, how isn't that frivolous when it's been dismissed with prejudice? All right, I may be misunderstanding the record. Here's my belief. Maybe I am. I don't know. My belief is that there was a 12B6 motion. It gets analyzed by Judge Carter. Judge Carter says the ADA claim is dismissed. He says on the 1983 claim, there's an 11th amendment in immunity. By the way, he rejected most of the arguments that the school district raised. He said on the 1983 claim, of course you can get injunctive relief. You may not be able to get monetary damages, but you can get injunctive relief. That claim survives. And it was the 504 claim that he said, I'm troubled by this one. I'm not sure I understand it. I'm going to dismiss it with leave to amend. So I don't believe that any of these claims were dismissed with prejudice at that point. They then filed their amended complaint. It's consistent with my memory. And if I'm wrong, please correct me. And at that point then, the first two claims are dismissed with prejudice by stipulation. The court approved the stipulation. In approving the stipulation, the judge never suggested that the claims were frivolous in any respect whatsoever. And indeed would not have done so because he had just concluded. But if something is dismissed with prejudice, how can then you bring it up again after that? That's my understanding of what happened. After it was dismissed with prejudice, then your client or your client's attorneys then brought it up again with the 504, which was not without prejudice. I thought Judge Carter granted leave to amend on the 504. He did. But I think that the 1983 and the ADA were resurrected when the 504 amendment was filed. Maybe I'll ask other counsel, but that was my understanding. Well, and if in fact that's happened, if I'm incorrect then, that issue, if it was an issue, was cured very quickly. Because then both of those first two claims were dismissed by stipulation. So if there in fact had been a preceding order, there was an order granting the motion to dismiss, but granting leave to amend on the 504. And not dismissing the 1983 claim because the 1983 claim, of course, they could get injunctive relief. The 11th Amendment or immunity, as the court knows, only prohibits monetary damages in federal court. So I don't think there could have been an order dismissing that claim with prejudice. I could be wrong.  But if I'm wrong, I'm sorry. Can I interject? I'd like to ask a few things about the merits of the case. What was the mother's objection to the OT assessment that caused her to want the school to have one redone by someone else? Thank you. So the primary objection was that the January 12, 2011 meeting to discuss the report, the mother voiced her concerns that there was no meaningful occupational therapy as the mother understood it to be. And what does that mean? Because what I understood is that, okay, so they go through the analysis and then they make recommendations. The recommendation here was that the therapist would meet for an hour each month. Is that right? With the student and her parents to see if things were developing well? I mean, what was the remedy and what was the objection to it? So the primary recommendation of the report was they would meet twice a year for 60 minutes to discuss what was going on. And what the mother thought, occupational therapy should mean occupational therapy. As in helping her find work or get skills to do work? Basically assisting her with her physical dexterity, helping her better manipulate what she needed to work with in an educational setting. Okay. So, all right. That's a legitimate objection. Actually, I'm not answering your question, because the objection was this. The objection was that that wasn't in the report. And I think at that point they were prepared to let it go. But it was at the January 12th meeting when the consultant said, we're going to have, you know, I understand you're concerned. We're going to have collaborative occupational therapy. And the mother's not an expert, but the mother and her trial attorney are thinking, what does that even mean? What does collaborative occupational therapy mean? And where is that addressed in your written report? And as they understood the law, as they understood the law, the basis for the determination ought to be in the written report to afford them a meaningful opportunity to interact in this process. As Judge Callahan noted, there's this back and forth communication that ought to be, you know, in the best of all circumstances, this communication that ought to be ongoing. Next question. The fees that were awarded, were they awarded both as against the attorney of the parent and the parent, or just the attorney of the parent? I can't tell from the order. I can't tell either. However, let me say this. There's some suggestion from my colleague that they only intended to move against the trial attorney. I know that the mom is devastated by this order. The order particularly singled her out in harsh language, suggested that she caused the harm to her child. And our point has been, this goes to the question of unreasonable delay. Our point has been that there was no unreasonable delay. The parents are not educational experts. They weren't given the basis for the determination wasn't in the written report. So it's somewhat difficult or problematic to see how they're going to be able to come back with any meaningful dialogue in that particular context. But the parents, the regulations are clear, and I think this court's precedent is clear as well, that we ought not to be penalizing the parents for not cooperating or not participating in the process. And in fact, the judge, his order, and I'm not criticizing Judge Carter either. I have a lot of respect for Judge Carter. But I think it seems to suggest that he's faulting the mother for not somehow participating in this process. It kind of begs the question, how is she going to be in a position to do that? Do you concede that any one set of your claims was frivolous? I think the 1983 claim seeking monetary damages, to the extent that that would seek monetary damages in California, would be frivolous because this court's precedent would preclude it. But that would be more against the lawyer than, I mean, 11 years into this, I think I understand 1983. But I mean, the client may not exactly understand 1983. But the ADA claim, I think the 1983 and the ADA claims have more of a frivolous smack to me than the other ones. And my view on that, quite simply, is look at the briefing. Look at excerpts of Record 323 that address the 1983 claim. It's nine lines. Nine lines on one page. But we know it's based on that letter. That's the total. My understanding is everyone agrees it was based on a letter written by the school district that said, we can claim attorney's fees, too. And I don't see how that could ever be a 1983 claim for damages. And I question how it could ever be an ADA claim for damages when all that they did was state what the law says. Well, keep in mind, it couldn't be for damages, but it could be for injunctive relief. And Judge Carter correctly analyzed and concluded that they could seek injunctive relief on the 1983 claim. So what did the amended complaint say, though? The amended complaint attempted to expand, principally attempted to expand upon the 504 claim to address what trial counsel believed. But did the 1983 claim in the amended complaint ask for damages? I don't remember, Judge Callahan, as I stand here. But may I ask, if we're going to look at that as being a question of frivolous, you know, and I think I would concede that in this, in California at least, a 1983 claim that seeks monetary damages is frivolous. That would be de minimis at most. Well, wait a second. So there is this Supreme Court case that says that the district court should apportion the fees. Yeah, FOX device. Between frivolous claims and non-frivolous claims. He seemed to not quite apply the right legal standard, though. And he seemed to conflate the two sections. Whether a claim was to be clean, so we'd know what he was saying. He would have to say whether it was frivolous, in which case it would be, the fees could be awarded against the attorneys only. Or if it was both frivolous and an improper purpose, in which case, some of the fees could have been awarded against another. Although, he never says in his order that the fees are awarded against another. Exactly. So I had a couple of thoughts there to answer that, Judge Wardlaw, is that as I read FOX device, it's much closer to Judge Reinhart's opinion than Harris v. Maricopa. And I think it's incumbent upon the district court to be very, very careful in allocating fees, whether it's frivolous or non-frivolous claims. I think under any analysis I would submit based upon the briefing, the principal claim here, the IDEA claim, is not frivolous. Let me ask you this. Let's just assume, and you know, I think you work for the Ninth Circuit, is that correct? I clerked for Judge Silverman, I clerked for Judge Sedgwick, and I appeared before you a couple of times. So you have some familiarity with the Ninth Circuit. So you know we have an appellate commissioner. Let's just say, assume for purposes of argument, that this panel felt that certain claims were frivolous, that certain were not. Is that, could the appellate commissioner apportion that, or would it have to go back to Judge Carter for that? Because the appellate commissioner regularly does do these fee things. See, I attempt to anticipate every question, and that's not a question that I anticipate. So should I feel good about that, or should I feel out of space about that? Well, you've put me on the spot many times before, so this is familiar territory for you. What I would request, Your Honor, is if that's a dispositive issue here, I think my colleague would agree with me, would like an opportunity to brief whether those are powers appropriately reserved for the appellate commissioner, or whether we ought to send it back to Judge Carter. Assume they are powers that the appellate commissioner has. I mean, parties can always agree to have somebody determine the question of the amount of the fees. Assume that if we settled the legal issues, and said, here, you're entitled to fees under, I don't want to explain the status of the law, but whatever it is. Say issue X, the school district is entitled to fees to the extent they are under the law, and we would have to spell that out, what our case law provides, what the standards for fees are. Then, would you agree, maybe Judge Callahan can correct me if this is not her question, then would you agree that that amount can be determined by the appellate commissioner if the court spells out which fees and under what standards? I feel like a problem child, but honestly, I would want to research. We can't agree on subject matter jurisdiction. I know the appellate commissioner has got pretty broad powers. I think the appellate commissioner can do it, but that being said, maybe the trial judge is the better person, having watched the entire litigation, to ferret out what was spent on what and the other, as opposed to someone that would be looking at it more cold. But then the flip side is that maybe someone that's not embroiled in it or invested in it might be a better venue to just do fees. Assume there are no legal problems that you have to deal with as to the appellate commissioner's authority or power to do this. Judge Callahan's question is would you be willing to have him do it rather than the district judge? Yes. Okay, good. It took a long time to get around to the right answer. Okay. Okay. I know I'm over my time. Yes. So we'll give you a couple of minutes, two minutes maximum for rebuttal. Thank you, Your Honor. Now it's good afternoon. Good afternoon. Amy Levine, appearing for Capistrano Unified School District. We understand that the burden is high for awarding attorney's fees in these kinds of cases, but what our concern is that the court doesn't read the fee-shifting statute out of the law entirely and recognize that there are those rare cases where fees may be properly awarded. Well, and this is a lot of money here, and it's not clear from the record whether it's against the attorneys or against the attorneys and the mother. Do you have a position on that? I think you said somewhere in there we're not seeking them against the mother, we're seeking them against the attorneys. That's true. That is our position. So we can clarify that in terms of that was what you were asking and that's what Judge Carter gave you against the attorneys, even though it doesn't specifically state that? Or is it possible he did it against the mother, too? It's possible that he did, but that wasn't our intent, and I don't think it was in our moving papers. So I think we would be happy with an order that was just against the attorneys. There's no doubt he made all the findings necessary to say that the mother herself had an improper purpose. Well, the attorney can ---- Which is a basis for fees against the mother. That's correct. But it's also a basis for attorneys' fees against the attorney as well. It could be either or. And so I think it was an alternative basis for awarding fees against the attorney, or at least that's how I would read it at this point with the clarification that that's what we're seeking. No, I'm not discouraging you from agreeing that we should not award attorneys' fees against the mother. That's perfectly fine. I was just pointing out to you that the judge's opinion is, as your opposing counsel said, very harsh as to the mother. Maybe you can clarify for me the questions that I was asking about with Mr. Fisher in terms of that on the ADA and the 1983 claims relative to what happened. My understanding is they were dismissed with prejudice, but that the appellant was allowed to ---- but the 504 was dismissed without prejudice. And then after that, the 504, there was an amended complaint. But that the appellant also included the 1983 and the ADA that had been dismissed with prejudice. What is your reading of the record? What do you know? That is correct. That's what happened. They did replead the two claims that had been dismissed. And then we filed another motion to dismiss. But now on the 1983, was it for damages again? It was for damages again. Well, the ---- let me just actually ---- Okay. So in your position on that would be it was already dismissed with prejudice. You were told that you can't get damages under a 1983 and this type of thing. So that's frivolous. Absolutely. But now on the ADA, the ADA was also based on that letter, right? Right. And so would your position on the ADA be not so much ---- I mean, there could be an ADA claim involving the letter, right? I mean, humanly possible. But is your position that because it was dismissed with prejudice, the fact that they resurrected it after it was dismissed with prejudice, then it became frivolous? Or what's your position on that? Well, my position is it was frivolous from the beginning. But it became more frivolous once it was dismissed with prejudice and they refiled it. They forced us to file another motion to dismiss, and then they stipulated to dismiss again. So what happened after these two frivolous claims were refiled after having been dismissed with prejudice? When you got the pleading, you what, prepared a motion to dismiss and they then stipulated? We, I think what happened is that we asked them to stipulate to dismiss it or to dismiss it, and that they didn't give us an answer that they would dismiss it until after our timeline for filing a new motion had run. So we filed the motion, we prepared the motion, we filed the motion, incurred the fees in doing that, and then a few days later there was a stipulation. But I would also add, as to the 1983 claim, there was no possible basis for injunctive relief anyway. So there's no explanation as to why they would have attempted to replead an injunctive relief claim when the whole basis for the claim was the attorney for the district sent a letter. I don't know how you enjoin that. You can't write more letters like that? I don't know. I don't know. I mean, there's just no, there's no set of facts that would support that sort of a claim. I'll go ahead. I take it it was a different law firm. Trial counsel was different than counsel here? No. No, for the mother? Oh, for the mother, yes. But my firm represented the district all the way through. But it was self, the law firm was self, I think? Correct, for the parent. Okay. Through the hearings. Now, I have more questions about the IDEA claims that in terms of it's not uncommon for, I mean, if parents don't agree with and they want another evaluation, that happens, right? And their position is that they know their, you know, they see their child every day. And the people that do these reports don't see their child every day. And I'm assuming that, well, I know that the IDEA expects that this will be an interactive process. You want to hear from the parents. So the fact that she just didn't agree with it, even though she said that's stupid or whatever, that in and of itself wouldn't be frivolous, would it, that you ask, I would like someone else to look at them? No, I don't think that that was ever the basis for determining that the claim was frivolous. Okay. And so, but then when you asked for the due process, it was 41 days. And so they claimed that 41 days was, that was too long, that was too much of a delay. And then I think also at the due process hearing, it talked about whether you're denying that additional report, right? Right. And you won at the due process. Now, the fact that there isn't any case that says specifically, I think there's some cases out there that say 60 days is too long, 41. Can you really say that asking that, that contesting that is frivolous? Well, there was really no authority supporting their position. But was there a case directly on point to support your position, that 41 days wasn't too long? Well, we have a case that says that 60 days isn't too long. So I think we do have a case saying that, therefore, 41 days isn't too long when it's an explained reason, and it was. And there was never any evidence that they put on, and I don't even think that there was cross-examination into that issue about whether the grounds for the time it took for the district to file for due process was justified. And then on appeal in the district court, there was never any dispute as to the factual basis for that. So the basis for them continuing to dispute it was we just don't like it. But there wasn't any actual plausible evidence put on either at the administrative level or at the district court level as to why that was not appropriate. Well, what about the 504, the fact that Judge Carter said, okay, you know, maybe I'm going to give you a chance to replete this because I think it's thin, but maybe there's something there. Doesn't that kind of tell you that it might not be frivolous if the judge is or is that or are we looking at it that just because a judge wants to be nice, then suddenly no good deed goes unpunished and you can't say it's frivolous later? Well, I think that Judge Carter himself clarified that in the attorney's fees order where he said he was perhaps overly generous in granting leave to amend. I don't think that the fact that it survived a first round of pleadings motions because it was unclear exactly what the theory was means that it's not frivolous. Part of it is part of it's the legal claim and part of it's the evidentiary claim and there was never any way that they were going to come up with evidence to support this. I guess I don't see that there's a real distinction between the 504 theory and the ADA theory or even the 1983 theory to some extent. Is the 504 based on the letter too? It's all based on the same letter. So it's a different statutory basis. I can't tell you why Judge Carter thought that the ADA claim was more frivolous than the 504 claim because I think they're essentially the same theory that there was interference. Tell me exactly what the letter said. The letter said we decline your settlement offer and we reserve our rights to seek attorney's fees and costs if you pursue the appeal. Something to that effect. And their letter said, their offer and their letter said, we want? Their offer and their letter said that they want $12,500 in attorney's fees for the hearing that they had lost. That was a due process hearing. Right, where they were represented by an advocate. Wasn't a lawyer also present? There was a lawyer who sat there and the hearing decision reflects that. So I think Judge Carter's opinion makes some factual errors, particularly in the section where he's accusing the mother of extortion and harassment and ransoming her child for the attorney's fees for her non-advocate. Because I think an attorney was there and the non-advocate, non-attorney advocate. It just seemed like it wasn't the whole picture when we looked at the record. You said it's a husband and wife is my understanding. I think the wife's the lawyer, the husband was the advocate. Aren't they related? Yeah, they are related. I think they are husband and wife. Excuse me. But even the hearing decision, the administrative law judge says student was represented by advocate. The advocate also present was attorney. Do we know that the advocate wouldn't be entitled to fees? Yes, they would not be entitled to fees. Sometimes I know that law is kind of developing, like whether a lawyer can ask for attorney's fees when he's representing himself and who else would be entitled to fees derivative of an attorney. Yeah. I know we cited a case. I believe it's versus San Bruno Unified School District. It's in our brief that there's a case that says that a non-attorney advocate in this type of proceeding is not entitled to fees. Now, would the mother know that as a non-lawyer? And the lawyer who was married to the advocate, were they the firm? Was that lawyer an attorney with the firm that was representing the mother? I think I may have lost you there, but they're all with the same firm. Okay. All right. So, okay. Because the mother could arguably have thought that she was entitled for the fees, and she asked for both the IEE and the fees for the advocate. Well, the letter came from the attorney. Right, right. I'm talking about the part of Judge Carter's decision where he accuses the mother of being an extortionist and holding her child's well-being in ransom and all of that, which seems to be rather harsh personal attacks on the mother, and I don't know if it's necessarily supported by the evidence. Well, I mean, to the extent that the letter was written by the attorney, then maybe it's not supported by the evidence that she played a role in that. I don't know, but he was probably just referring to that party sent that letter. So, but essentially the attorney was asking for fees that the attorney could not ask for? Correct. Yeah. There was no indication. I read through the transcripts, and the attorney didn't do anything. If she did anything, she might have, you know, handed him a piece of paper, and it's not in the record, but there's nothing there. The $12,000 in fees that they said they would settle for or the $12,000 payment, is there any reason under the law that that couldn't cover the advice the attorney has been giving the family throughout this and the amount of time he would otherwise spend in processing an appeal or may have prepared an appeal? Can't you settle for attorney's fees that you have incurred other than fees at the meeting? It's possible. There's nothing in the record that says that that was the case. Well, you don't have to say that it has anything in the record as far as I understand it. Well, I mean, in our record. I mean, if they said, we're going to appeal, and instead of appealing, if you pay us the expenses, we have this separate. They didn't say that. But it said if you pay us $12,000, and they may have incurred $12,000 in fees throughout this whole experience, is there something wrong with that? Well, first of all, there was no reason for it because they had lost the hearing. But secondly, there was no reason. Well, they're appealing because they say, we think we have a good case. We're going to appeal. But we won't appeal if you give us the result and you pay us what it's cost us to get to this point where we have to go to the Court of Appeals or the district court to get our rights. I'm just trying to understand why that is some terrible thing that the district court castigated. Well, I think the theory there is that when the only purpose for filing an appeal is to achieve attorney's fees, and you don't really care about the evaluation, you don't really have a good basis for it. No, but she also asked for the IAE, which is what they wanted. They wanted another group. What the mother wanted was another group to do this assessment so she could get more tangible tools and skills for her child. Well, I'm not sure that that's why she wanted the IAE or that that's anywhere reflected in the record. I think that that's the rereading of what her motivation is, which isn't the basis for the – Well, what else would it be? I mean, did she just – I mean, there's nothing else in the record other than she wanted to – Conceitedly, everybody recognizes that C.W. is a special needs child with a lot of needs, and her mother's obviously had to work with the school district, you probably, for years to do this. And so the mother – I don't see why the mother would be unreasonable in thinking this is not the kind of occupational therapy that's going to help my daughter in life. I don't think it's unreasonable for her to think that, and that may have, in fact, been her motivation. But that wasn't anything that ever came out at any point during the litigation until there was an appeal on the attorney's fees. She might have gotten into the hands of the wrong lawyers or something. And I think that's the point, is that the frivolousness standard is one that the attorney is subjected to. So if the mother had nothing but the best interests at heart, that doesn't really matter. Because if she comes to an attorney and the attorney says, yeah, I can make this claim, but there is no claim there, there's still attorney's fees liability in that instance. It doesn't matter that it was done for altruistic reasons. I understand exactly, and I guess I'm just still focused on these findings related to the mother's improper purpose by Judge Carter and whether there's a project anywhere in the record. And I don't think you need to reach that question because we're not seeking fees against the parent. And I think the frivolousness, you wouldn't be able to get the improper purpose wrong unless you should. Have you had other dealings with this firm? Me personally, no. But others in my firm and the attorney who represented the student at due process has too, and the district has. But the attorney that represented the one that sat there, that's what you mean? No, no, no. I mean Ernest Bell, who was the advocate. No, no. He was with our firm representing the district. Oh, oh, okay. So we've had repeat encounters as a firm, but not me personally. Okay. So anyway, I know I'm way out of time. You're well over. Okay. All right. Thank you very much. But we had questions, so we thank you for answering the questions. Thank you very much. Great. So briefly, Your Honors, on the first three claims, I've checked the record, and it's kind of consistent with what I had thought. The 88 claim was dismissed with prejudice in December of 2011. The Section 1983 claim, the judge said, you know, injunctive relief is possible. The 504 claim, you know, I'm concerned there, go ahead and amend it. I agree with my colleague, by the way, that the 504 claim and the 88 claim are indistinguishable, which sort of, to my thinking at least, further supports the claim that we've made that it's not a frivolous claim. It might be a marginal claim. It might be a weak claim. It's not a frivolous claim. They did cite, trial counsel cited the Weitzel opinion at Excerpt of Record 197. It's a Second Circuit case. Again, not the strongest case in the world, but it dealt with the same type of situation where a school district was making threats or coercive types of statements to parents in an apparent attempt to dissuade them from reasonably asserting their rights, which makes it a plausible claim. Maybe not a strong claim. Well, but that was the law that they could get. They could ask for fees, so it's putting someone on notice. And I'm a little bothered by the letter that was sent asking for attorneys' fees when the attorney just sat there at the due process and had an advocate. So, two points. Number one, they didn't ask for fees and costs in their letter, the July 14th letter. They didn't cite the IDA, and I don't mean to quibble, but I think it's pretty important. The court's order at Excerpt of Record 191 sets forth the letter in its entirety, and it's also reproduced at the clerk's docket 14-1. That was Exhibit B to the amendment. So what does it say? Sanctions. That if accordingly, if you appeal, we're going to seek sanctions against you. Accordingly, the district reserves the right to seek sanctions against you and your client if the most recent administrative decision is appealed. I've looked at this letter of Judge Callahan. And, you know, I know how this game gets played. But what was the letter that the other law firm sent asking for attorneys' fees when all the person did was sit in the due process hearing? That's not what all they did, though, Your Honor. And I agree 1,000 percent with Judge Reinhart. And when you look at these cases in the Title VII context or any other context where plaintiffs are entitled to fees, it's not limited just to the hearing time. There's consulting time, conferring time. Let's talk about this. Let's talk about the decision. Let's talk about the appeal. And ultimately, a decision is made. I think the $12,000 figure, in fact, was a significant discount over the total time that was actually spent here with the mother, K.S. They were attempting to, and I find it bizarre that we're penalizing the mother here. Ordinarily, we applaud efforts to settle cases, to resolve cases. The mother is attempting to reach out here and say, hey, you know, how about this? I want an IEE for my daughter. Will you please provide that? And we'll accept $12,000, and that's it. And instead, they get this letter that, in my opinion, could have used some editing. Was that after the due process hearing where they had lost, though? Yes. That's right. And, you know, we do lose. People do lose, which is why we wind up before an appellate tribunal. They lost before the administrative law judge. They believed, rightly or wrongly or indifferently, that the administrative law judge didn't look at the basis for the determination. They thought they had a plausible good argument to make. They said, let's go. Our next avenue here is before the district judge. Let's bring this case before the district judge. But before we do that, let's reach out and see if we can't resolve this case. And that's what they attempted to do, and now we're going to penalize them. It's a lot like the district court penalizing the mom here, you know, punishing her and saying, well, she's at fault. She's the one who harmed her child just because she wasn't able to explain the district court's own assessment report. So I don't think any part of this case was frivolous other than that one sliver, that tiny sliver that dealt with the monetary damages on the 1983. And as I look at Justice Kagan's opinion in Fox-Vice and Judge Reinhart's opinion in Harris-Maricopa, that's so intertwined within all of the other claims that Judge Carter concluded could move forward, the 504 claim, that no fees ought to be awarded. So I would respectfully request that the court reverse vacate, remand, and just let this case be, is what I would recommend. Thank you, counsel. I'd like to, just before we leave, ask your opposing counsel the question that Judge Callahan asked you. No, no, no. Have a seat. Do you recall the question that Judge Callahan asked about the appellate commissioner? You know, we do often when we decide a case. They're entitled to, someone's entitled to attorney's fees. We often refer it to the appellate commissioner to determine the amount. Those cases are usually simpler than this because we get them just on motions and we do it without this whole big production we have this morning. The question is, would you be agreeable to our resolving all the legal issues and sending the case to the appellate commissioner for determination of the amounts? I probably, I would prefer that Judge Carter decided it because I think he is. I can see why, yes. With the record, I would probably agree to it, ultimately, if you wanted to have us talk about that and see if we can stipulate to that. No, I don't want to have a talk about it. No, I mean with opposing counsel. With opposing counsel. Well, I'm not sure stipulation's necessary, but that's something that will, that, but, all right. I didn't mean to be quite as generous as I was. We just wanted to know whether you would have any, register any objection to it in the past so that we can determine whether that matters. I don't know that I have a legal objection to it. My preference would be that Judge Carter decides. All right. Thank you. Thank you. The case is adjourned. It will be submitted. The court will stand in recess for the day.
judges: REINHARDT, WARDLAW, CALLAHAN